

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
**TAWANA C. MARSHALL, CLERK**
**THE DATE OF ENTRY IS**
**ON THE COURT'S DOCKET**

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed October 26, 2006**                                                 **United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE: § | |
| § | |
| SCOTT B. MEYROWITZ, § | CASE NO. 06-31660-bjh-11 |
| § | |
| Debtor. § | |
| § | |

**MEMORANDUM OPINION AND ORDER GRANTING DEBTOR'S MOTION FOR PROTECTION PURSUANT TO 11 U.S.C. § 107(b)(1) AND FED. R. BANKR. P. 9018**

Before the Court is the Motion for Protection Pursuant to 11 U.S.C. § 107(b)(1) and Fed. R. Bankr. P. 9018 (the "Motion for Protection"), filed by Scott B. Meyrowitz ("Meyrowitz" or the "Debtor"). The Court has jurisdiction over the Motion for Protection in accordance with 28 U.S.C. §§ 1334 and 157(b). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.

**Memorandum Opinion and Order**                                                                      **Page 1**

I. **Factual Background**

Meyrowitz was formerly in the business of brokering rare diamond transactions. One of the reasons Meyrowitz filed for bankruptcy protection was the liability and litigation emerging from the collapse of a multi-million dollar diamond transaction he spent approximately two years pursuing in New York City. To facilitate this particular multi-million dollar transaction, William Noble Rare Jewels, L.P. ("WNR Jewels") supplied Meyrowitz with three white diamonds. These three white diamonds were to be used as an incentive towards the consummation of a much larger, multi-million dollar diamond transaction involving a foreign purchaser.

After the multi-million dollar diamond transaction collapsed (the "Failed WNR Jewels Transaction"), Meyrowitz failed to return the three white diamonds to WNR Jewels. WNR Jewels pursued Meyrowitz in state court and the state court issued a turnover order against Meyrowitz on March 8, 2006, ordering Meyrowitz to turnover the three white diamonds to WNR Jewels (the "State Court Turnover Order"). Meyrowitz filed for bankruptcy protection on April 25, 2006 (the "Petition Date"), when he was unable to comply with the State Court Turnover Order. Meyrowitz has testified previously that he was and is unable to comply with the State Court Turnover Order because he no longer has possession of the three white diamonds. Meyrowitz claims the foreign purchaser absconded with the three white diamonds.

Since his bankruptcy filing, Meyrowitz has focused his attention on a vitamin supplement business, Nutritox, L.L.C. ("Nutritox"), which Meyrowitz started in 2003. In fact, Meyrowitz prepared and filed a plan of reorganization that will be funded primarily from the operations of Nutritox. However, if the opportunity to broker rare diamond transactions arises, Meyrowitz proposes to use his diamond sale commissions to supplement the funding of his plan. In that regard,

Meyrowitz was recently approached by a few of his former contacts in the diamond industry and was asked to facilitate one or more diamond transactions on consignment. Accordingly, Meyrowitz filed a Motion to Allow Debtor-in-Possession to Sell Property of the Estate Pursuant to 11 U.S.C. § 363(b) (the "Sale Motion").[1]

WNR Jewels filed an objection to the Sale Motion (the "Objection") claiming that Meyrowitz did not include information in the Sale Motion sufficient to satisfy the Court and other interested parties that the contemplated transaction is legitimate and justified by the facts. In particular, WNR Jewels seeks evidence showing: (i) the source of the diamonds to be sold, including the identity of the consignor, if any; (ii) a description of the diamonds sufficient to ensure that they are not WNR Jewels' diamonds from the Failed WNR Jewels Transaction; and (iii) a chain of custody of the diamonds sufficient to indicate that they are not proceeds from or otherwise related to WNR Jewels' diamonds and the Failed WNR Jewels Transaction. A hearing on the Sale Motion was scheduled for October 16, 2006.

One business day prior to the scheduled hearing on the Sale Motion, Meyrowitz filed the Motion for Protection. Through the Motion for Protection, Meyrowitz seeks protection from public disclosure of the names of the buyers and sellers involved in the proposed transactions, the price of the stones, their exact weight, and other certain other "commercial" information. Meyrowitz contends that this information is "confidential commercial information" subject to protection under § 107(b)(1) of the Bankruptcy Code and Fed. R. Bankr. P. 9018. Meyrowitz is willing to disclose this

---

[1] At the Hearing, counsel for Meyrowitz indicated that the Sale Motion was filed out of an abundance of caution. Contrary to the title of the Sale Motion, Meyrowitz does not propose to sell property of his bankruptcy estate. The diamonds to be sold are not property of Meyrowitz' estate. Rather, Meyrowitz' estate will only acquire a consignment interest in the diamonds if the transactions go forward.

information to the Court and to the United States Trustee (the "U.S. Trustee") on an *in camera* basis.

At the October 16, 2006 scheduled hearing on the Sale Motion, the parties agreed to reset the hearing on the Sale Motion to a later date and instead, the Court considered the Motion for Protection (the "Hearing"). At the conclusion of the Hearing, the Court took the Motion for Protection under advisement. The issue before this Court is whether certain information regarding the transactions contemplated in the Sale Motion is confidential commercial information of the kind entitled to protection from public disclosure under § 107(b)(1) of the Bankruptcy Code.

## II. Legal Analysis

The Court first turns to § 107(b)(1) of the Bankruptcy Code and Bankruptcy Rule 9018. Section 107(b)(1) provides that:

> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may -
> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information.

11 U.S.C. § 107(b)(1). This statute is implemented through Bankruptcy Rule 9018, which provides that:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr. P. 9018.

In order to obtain protection from public disclosure, the Debtor (or another party in interest)

must show that the information he seeks to protect from public disclosure is "confidential" and "commercial" in nature. *See Video Software Dealers Ass'n v. Orion Pictures Corp.* (*In re Orion Pictures Corp.*), 21 F.3d 24, 27 (2nd Cir. 1994). Confidential commercial information does not need to rise to the level of trade secret in order to obtain protection under § 107(b)(1). *Id.* at 28. Commercial information has been defined as information that would cause an unfair advantage to competitors by providing them information as to the commercial operations of the debtor. *Id.* at 27; *In re Georgetown Steel Co.*, 306 B.R. 542, 546 (Bankr. D. S.C. 2004); *In re Northstar Energy, Inc.*, 315 B.R. 425, 428-29 (Bankr. E.D. Tex. 2004). The statute was designed to protect debtors from the disclosure of information that could reasonably be expected to cause the entity commercial injury. *Northstar Energy*, 315 B.R. at 428-29.

In *Northstar Energy*, the debtor was in the business of identifying prospective oil and gas properties for acquisition and development. *Id.* at 427. The debtor privately solicited financial support from a confidential list of potential investors which it had developed over a number of years. *Id.* The debtor sought a protective order to avoid disclosure of its list of investors which it deemed to be confidential information. *Id.* The bankruptcy court found that the debtor had a "rather unique niche in the oil and gas business" and that disclosure of its investor list would likely be used by competitors to the debtor's detriment. *Id.* at 429. The court granted the debtor's motion for protective order in part and required the debtor to produce the investor list to the court under seal. *Id.* at 430.

The situation here is highly analogous to *Northstar Energy*. Meyrowitz was and occasionally still is engaged in a unique niche market in the diamond business. As Meyrowitz testified at the Hearing, maintaining the strict confidentiality of the names of potential buyers and

**Memorandum Opinion and Order**                                                                                        **Page 5**

sellers of rare diamonds is crucial to success in the rare diamond brokering business. Meyrowitz testified that there are only a handful of people, including himself, who are successful rare diamond brokers. Meyrowitz also testified that the names of the potential buyers and sellers, if publicly disclosed, would be used immediately by Meyrowitz' competitors, including WNR Jewels, to the detriment of Meyrowitz. Audiotape: Hearing conducted 10/16/06 at 2:19:55 - 2:22:50 p.m. (on file with the Court).

While the Court is troubled by the fact that Meyrowitz has given false names of buyers and sellers of rare diamonds to those who participated in pre-petition diamond transactions with him,[2] the evidentiary record is uncontroverted that Meyrowitz does not reveal the actual names of his buyers and sellers in his rare diamond transactions.[3] The record is also uncontroverted that (i) brokers of rare diamonds keep the names of potential buyers and sellers confidential, and (ii) the names of potential buyers and sellers of rare diamonds is a business asset that could be used immediately by Meyrowitz' competitors, including WNR Jewels, to Meyrowitz' detriment.

Accordingly, the Court finds that if Meyrowitz was required to disclose publicly the names of potential buyers and sellers of rare diamonds, it could be reasonably expected that Meyrowitz'

---

[2] William Noble ("Noble") testified at the Hearing that on a prior occasion Meyrowitz gave Noble a name of a potential buyer of rare diamonds, including a facsimile with other names of potential buyers of rare diamonds. Audiotape: Hearing conducted 10/16/06 at 2:26:48 p.m. (on file with the Court). However, subsequent to Noble's testimony, Meyrowitz was recalled and he testified that the name he gave to Noble in connection with an earlier transaction and in connection with the Failed WNR Jewels Transaction was actually false. Audiotape: Hearing conducted 10/16/06 at 2:35:09 - 2:35:46 p.m. (on file with the Court). Noble did not controvert Meyrowitz' testimony nor did Noble offer any testimony to show that the name given to him by Meyrowitz was in fact legitimate.

[3] Meyrowitz revealed the name of the proposed purchaser from the Failed WNR Jewels Transaction as a Mr. Chandrashekar Satyanarayan ("Satyanarayan"). However, Meyrowitz' revelation of Satyanarayan occurred (i) after the transaction at issue had failed, and (ii) in connection with Meyrowitz' bankruptcy case (i.e., preparation of his schedules, responses to questions at the creditors' meeting, and in response to WNR Jewels' Motion for Relief from the Automatic Stay). There is no evidence in this record to suggest that Meyrowitz discloses the names of potential buyers and sellers of rare diamonds during the pendency of live transactions and prior to the consummation or failure of those transactions.

**Memorandum Opinion and Order** **Page 6**

competitors would use this information and that such use would cause Meyrowitz commercial injury.[4] On this record, the Court is satisfied that Meyrowitz has shown that the names of potential buyers and sellers of rare diamonds constitute confidential commercial information entitled to protection from public disclosure under § 107(b)(1) of the Bankruptcy Code. Upon such a finding, the plain language of § 107(b)(1) of the Bankruptcy Code requires the Court to protect Meyrowitz from publicly disclosing this information.

In the Motion for Protection, Meyrowitz asks this Court to protect other information from disclosure (other than just the names of the buyers and sellers). In particular, the other information Meyrowitz seeks to protect consists of the exact weight of the diamonds, the color of the diamonds, and the price of the diamonds to be sold in the proposed transactions (together, the "Other Information"). However, at the Hearing, Meyrowitz did not provide any testimony or other evidence to support his argument that the Other Information is confidential commercial information. In fact, Meyrowitz' testimony at the Hearing and his allegations in the Motion for Protection would appear to be inconsistent with a finding that the Other Information is confidential commercial information.[5] Accordingly, on this record, the Court cannot find that the Other Information is confidential commercial information.

---

[4] The result here is not affected by the fact that Meyrowitz is not primarily engaged in the business of brokering rare diamonds any longer. As stated at the Hearing, Meyrowitz plans to supplement his income from Nutritox by brokering rare diamonds when the opportunity to do so arises. Meyrowitz will use this supplemental income to make payments to his creditors under his plan of reorganization, if confirmed.

[5] At the Hearing, Meyrowitz testified on cross-examination that, when working with other brokers, Meyrowitz would identify to the other brokers the type of stone Meyrowitz was looking for (i.e., color and weight). Audiotape: Hearing conducted 10/16/06 at 2:23:47 -2:23:55 p.m. (on file with the Court). Also, in the Motion for Protection, Meyrowitz claims that he offered to provide to WNR Jewels an affidavit describing the color of the stones, their approximate weights, and the amount of the commission he will make on the transactions contemplated in the Sale Motion. *See* Debtor's Motion for Protection, ¶ 24 fn. 4.

Notwithstanding the fact that the names of the buyers and sellers constitute confidential commercial information, and in order to address the concerns of WNR Jewels, the Court will require an *in camera* review of the actual names of the proposed buyers and sellers involved in the transactions contemplated in the Sale Motion.[6] The Court will also permit the U.S. Trustee to participate in the *in camera* review process, if it wishes to do so.

### III. Conclusion

The Motion for Protection is granted in part. The Court will protect Meyrowitz from disclosing publicly the actual names of the buyers and sellers involved in the transactions contemplated in the Sale Motion.

However, the Debtor shall, within three business days from the entry of this Order, file under seal with the Court, a sworn statement by Meyrowitz that contains the actual names of the buyers and sellers involved in the transactions contemplated in the Sale Motion (the "Confidential Information").

The Debtor shall, within three business days from the entry of this Order, contact the U.S. Trustee and, if so requested by the U.S. Trustee, provide a copy of the Confidential Information to the U.S. Trustee, who shall maintain the confidentiality of the Confidential Information pending further Order of the Court.

**SO ORDERED.**

### END OF ORDER ###

---

[6] WNR Jewels is agreeable to an *in camera* review process. *See* WNR Jewels' Objection to Sale Motion, ¶ 24. However, the only difference here is that the Court will not require Meyrowitz to reveal the actual names of the buyers and sellers to WNR Jewels.