

**U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed September 11, 2007**                                                                 **United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No. 06-31660-BJH-11 |
| SCOTT BRADLEY MEYROWITZ, | § | |
| | § | Chapter 11 |
| Debtor. | § | |
| | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Motion for Allowance of Late-Filed Proof of Claim as Timely Filed (the "Motion") filed by Cherna Silvert ("Silvert" or "Movant"). The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B). This Memorandum Opinion and Order contains the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

**I.      Factual Background**

**Memorandum Opinion and Order**                                                                                                                1

Silvert is a creditor of Scott Meyrowitz ("Meyrowitz" or the "Debtor") by virtue of a default judgment entered against the Debtor and Scott Meyrowitz, Inc. on November 29, 2001 by the Superior Court of California, Contra Costa County, in case number C01-02841. *See* Movant's Exhibit 2. The default judgment ordered that Silvert recover from the Debtor and co-defendant Scott Meyrowitz, Inc.: (i) $15,000, (ii) either eight pieces of jewelry or their fair market value, set at $235,400, (iii) $22,935 as additional damages for wrongful detention of that jewelry, and (iv) $196 in costs. *Id*.

The Debtor filed the above-referenced bankruptcy case on April 25, 2006 (the "Case"). The Debtor's schedules listed Silvert as an unsecured judgment creditor with a "disputed" claim of $250,000, although the Debtor did not list Silvert as a disputed creditor on his list of the 20 largest creditors in the Case. The address provided for Silvert on the schedules, the 20-largest creditor list, and the creditor matrix was: "Cherna Silvert, 145 Natma [sic] St., San Francisco, CA 94105."

The meeting of creditors required by 11 U.S.C. § 341 was originally scheduled for May 23, 2006, but was later moved to June 5, 2006. The deadline for filing proofs of claims was correspondingly extended to September 5, 2006.

On May 10, 2006, the Debtor sent a notice of the Case, the § 341 meeting, and the proof of claim filing deadline to 54 creditors, including Silvert.[1] *See* Docket No. 20. The "Natma" Street address was used on this notice, as well as on all of the notices sent to Silvert through the date that she filed an appearance in the Case.

Specifically, on May 2, 2007, Silvert filed a Notice of Appearance in the Case. And, on June 6, 2007, Silvert filed a proof of claim in the Case for $439,451.51, which is apparently the

---

[1] The affidavit of mailing states that the notices were sent to creditors on May 10, "2005." The Court assumes that was a typographical error.

sum of the judgment, alleged to be $288,531, and the accrued interest on that judgment, alleged to be $150,920.51.  While the Debtor apparently disputes the amount and validity of the Silvert claim, the only question before the Court now is whether this proof of claim should be deemed a timely-filed claim in the Case.

According to Silvert, her proof of claim should be deemed timely-filed because the notice of the Case and of the bar date that the Debtor directed to her was deficient for two reasons.  First, the street name is misspelled – *i.e.*, it should be "Natoma."  Second, while Silvert owned the building located at 145 Natoma Street in San Francisco, she never had an office there or accepted mail there – *i.e.*, she leased that building out to tenants.

At the hearing on the Motion, the Debtor testified that he had been a traveling jewelry salesman and had had substantial business dealings with Silvert in 1999 and 2000.  He had met her several times in the San Francisco area and sent her numerous packages.  Regarding their actual meetings, the Debtor testified that he had visited Silvert's warehouse in San Francisco and more than one of the residences of Silvert, who "moved frequently."  The Debtor testified that while most of the packages were simply mailed to Federal Express offices to be picked up at those locations by Silvert (because they contained jewelry and his insurance required this), he had mailed packages to the office of Dr. Mark Silvert, Silvert's husband, and had sent faxes to Silvert at Dr. Silvert's office and her warehouse.  The Debtor admitted that he still had some of these addresses in his business records and that he had a phone number for Silvert in his business records.

As for the building on Natoma Street, the Debtor explained that towards the end of his business relationship with Silvert, he had visited that location with her and her husband, and that Silvert had told him that she was planning to open an office there.  Thus, when preparing to file

**Memorandum Opinion and Order**                                                                                                         3

his bankruptcy petition more than five years later, the Debtor searched for Silvert's address on the Internet, found the Natoma Street address, remembered that Silvert had said that she would be opening an office at that location, and decided to list that address for her in his bankruptcy documents.

Silvert testified, however, that she did not become aware of the Case until February 2007, when a janitor at her building on Natoma Street gave her an envelope from the Debtor's counsel. The envelope is addressed to Silvert at "145 Natma" Street, and has two question marks written above the address. Movant's Exhibit 1. Silvert further testified that she has never conducted any business from the Natoma Street building and has never received mail at that address. She also testified that the Debtor had visited her former and current residences, and that she received mail either at these residences or at her husband's office. Finally, Silvert testified that her husband's office has been at the same location for thirteen years.

Silvert also introduced the testimony of Joseph Duffy, a jewelry dealer who knew both parties. Mr. Duffy confirmed that the Debtor had mailed packages to Silvert at Dr. Silvert's office.

**II.     Legal Analysis**

Meyrowitz argues that Silvert must demonstrate that her failure to file a proof of claim before the bar date was the result of "excusable neglect," relying on Federal Rule of Bankruptcy Procedure 9006(b)(1), which allows the Court "to permit a late filing [of a proof of claim] if the movant's failure to comply with an earlier deadline was the result of excusable neglect." *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730, 736 (5th Cir. 1995) (citing *Pioneer Inv. Servs. Co. v. Brunswick Assocs. L.P.*, 507 U.S. 380, 382 (1993)). In contrast, Silvert argues that she does not have to show excusable neglect for missing the bar date in the

Case because she was denied due process. In other words, according to Silvert, she should be permitted to file a claim in the Case that is treated as a timely-filed claim because she did not get notice of the bar date until long after it had passed. And, that once she learned of the Case, she moved reasonably promptly to file a notice of appearance, her proof of claim, and the Motion.

For the reasons explained more fully below, the Court agrees with Silvert.

    a. **Due Process**

"An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated*, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Trust Co.*, 339 U.S. 306, 314 (1950) (emphasis added). Applying these principles in the context of claims in bankruptcy, the Fifth Circuit has stated:

> A creditor's claim can be barred for untimeliness only upon a showing that it received reasonable notice. Determining whether a creditor received adequate notice depends on the facts and circumstances of each case. Due process requires notice that is *reasonably calculated* to reach all interested parties, reasonably conveys all of the required information, and permits a reasonable amount of time for response. A claimant may therefore file a late proof of claim if he can show that failure to allow the filing would be violative of due process.

*In re Eagle Bus Mfg.*, 62 F.3d at 735 (emphasis added) (citing *Oppenheim, Appel, Dixon & Co. v. Bullock (In re Robintech, Inc.)*, 863 F.2d 393, 396 (5th Cir. 1989)). Thus, actual receipt of the notice is not necessary; the sender only has to undertake measures that are "reasonably calculated" to provide notice to the proper parties.

The Debtor argues that the notice provided to Silvert was reasonably calculated to reach her. Specifically, the Debtor asserts that he is entitled to the benefit of the presumption that a correctly mailed notice gives proper notice, and which shifts the question from whether the intended recipient actually received notice to whether the notice was properly mailed. "Mailing a notice by First Class U.S. Mail to the *last known address* of a creditor satisfies due process

**Memorandum Opinion and Order**     5

because it is *reasonably calculated* to inform the creditor of the bar date for filing proofs of claim." *In re Eagle Bus Mfg.*, 62 F.3d at 736 (emphasis added). *See also* Federal Rule of Bankruptcy Procedure 9006(e) (stating that "notice by mail is complete on mailing").

However, this presumption does not apply here because the Natoma Street address was not Silvert's last known address. Therefore, sending notice to Silvert at this address was not reasonably calculated to provide her with actual notice of the Case. The evidence establishes that the building on Natoma Street was *never* a known address of Silvert – it was neither her known address during her business dealings with the Debtor nor an actual address at which she ever received mail. The Debtor's decision to send notice to a location that he remembered Silvert telling him that she intended to use for an office some five years earlier was not reasonably calculated to provide notice to Silvert of the Case and the deadline for filing a proof of claim.

The use of this address is particularly puzzling when the Debtor had phone numbers for Silvert and her husband's long-standing office address, at which Silvert had actually received mail from the Debtor in the past. After all, 11 U.S.C. § 523(a)(3) provides that a debt that was not properly scheduled will not be discharged if the creditor did not receive notice or have actual knowledge of the bankruptcy case in time to assert its rights. *See Faden v. Insurance Co. of N. Am. (In re Faden)*, 96 F.3d 792, 796 (5th Cir. 1996) (applying 11 U.S.C. § 523(a)(3) and stating "[a]lthough a bankrupt is not required to exhaust every possible avenue of information in ascertaining a creditor's address, he must exercise reasonable diligence in accurately scheduling his debts").

Because the Debtor did not provide notice to Silvert that was "*reasonably calculated, under all the circumstances, to apprise [her] of the pendency of the [Case and of the bar date for filing claims]*," the Court concludes that due process was not satisfied here.

### b. Laches

The Debtor next argues that even if Silvert had a right to have her late-filed claim deemed timely-filed, she relinquished that right by dawdling between becoming aware of the Case in February 2007 and filing a proof of claim on June 6, 2007. The Debtor invokes the equitable doctrine of laches, which prevents the late filing of a proof of claim if the claimant's delay was unreasonable. *See Walters v. Hunt (In re Hunt)*, 146 B.R. 178, 184 (Bankr. N.D. Tex. 1992). "[L]aches requires a showing of both unreasonable delay and prejudice to the party who raises the defense." *In re Henderson*, 577 F.2d 997, 1001 (5th Cir. 1978). Laches is an affirmative defense, and the burden of proof for this issue is upon the party that raises it.[2] *Id*. at 1002.

The evidence does not reveal exactly when in February 2007 a janitor at the Natoma Street building handed Silvert an envelope from Debtor's counsel, which put her on actual notice of the pendency of the Case. What is clear is that Silvert filed her proof of claim on June 6, 2007, between 98 and 125 days[3] after she became aware of the Case.

The caselaw on laches generally draws the line at a longer period. *See In re Hunt*, 146 B.R. at 184 (finding a delay of almost two-and-a-half-years unreasonable); *In re Cmehil*, 43 B.R.

---

[2] The Debtor appears to be attempting to impermissibly shift the burden of proof regarding his laches defense to Silvert. Specifically, in his response to Silvert's reply brief, the Debtor states "[h]ere, the evidence shows that Silvert provided *no reason whatsoever* for her delay in filing her proof of claim." Docket No. 145 (the "Sur-Reply Brief") at p. 6 (emphasis in original). Similarly, the Debtor alleges that "Silvert attempts to deflect attention away from her own unexplained inaction through a barrage of speculations about the Debtor and the case that are unsupported by the evidence." *Id*. at p. 7. Finally, the Debtor asserts that "it appears that her delay was an intentional 'wait and see' strategy to gain an advantage . . . ." *Id*. at p. 5. However, notwithstanding this rhetoric, the burden of proof is on the Debtor to show an unreasonable delay, which he has failed to do on this record.

[3] Assuming Silvert was handed the envelope on February 1, she filed her proof of claim 125 days later. Assuming Silvert was handed the envelope on February 28, she filed her proof of claim 98 days later.

**Memorandum Opinion and Order** 7

404, 408 (Bankr. N.D. Ohio 1984) (two-year delay inexcusable). *See also Source, Inc. v. SourceOne, Inc.*, No. 3:05-CV-1414-G ECF, 2006 U.S. Dist. LEXIS 62401 at *25 (N.D. Tex. Aug. 16, 2006) (finding a five month delay excusable). *But see In re Missionary Baptist Found., Inc.*, 41 B.R. 467, 471 (Bankr. N.D. Tex. 1984) (refusing to allow late-filed claim when creditor had notice of the case two-and-a-half months prior to the claim filing deadline). While there is no bright-line rule for determining when a creditor's delay is unreasonable, the Court notes that other creditors who had been properly notified of the filing of the Case on April 25, 2006 were given until September 5, 2006 – more than 120 days – to file a proof of claim. Considering this fact, and guided by the relevant legal precedent, the Court finds that Silvert's delay between learning of the Case and filing a proof of claim was not unreasonable.

In addition, the Debtor's evidence of prejudice is unpersuasive. The Case was languishing until this Court refused to grant in full the Debtor's request for a third 120-day extension of exclusivity under 11 U.S.C. § 1121 at a status conference held on May 2, 2007, the same day that Silvert filed a notice of appearance in the Case. Because exclusivity was about to expire, the Debtor hurried up to finalize his negotiations with another large creditor – *i.e.*, William Noble Fine Jewels ("Noble"), and he filed his proposed disclosure statement and a plan of reorganization on May 18, 2007.

In his response to the Motion and the Sur-Reply Brief, the Debtor argues that allowing Silvert's claim as timely-filed would prejudice him by disrupting his reorganization efforts. Specifically, the Debtor argues that he has worked very hard to negotiate the terms of what he and his counsel believed would be a consensual plan with Noble, and that if Silvert's claim is allowed to participate in the Case, the agreed-upon treatment of Noble's claim may no longer be possible. However, at the May 2, 2007 status conference, the Court was informed that a

settlement with Noble had not been finalized.  So, it appears that this settlement with Noble was finalized after Silvert's first appearance in the Case and at a time when the Debtor should have anticipated that Silvert might seek to participate financially in the Case through the filing of a proof of claim.[4]

While perhaps unfortunate to his current proposed plan,[5] it is the Debtor's own fault that Silvert was not given proper notice of the Case and an opportunity to come forward and assert her claim sooner.  In addition, the Debtor's formal plan process is still in its infancy, as the Court has not yet even approved a disclosure statement from which the Debtor could begin to solicit acceptances of his proposed plan.  Moreover, even if the Court deems Silvert's claim to be timely-filed, that fact does not mean that it will become an allowed unsecured claim entitled to distributions under a confirmed plan of reorganization in the Case.  The Debtor contends that he has objections to the Silvert claim on the merits.  Even if deemed timely-filed, the Debtor may still object to the claim and seek its disallowance for reasons other than timeliness.

On this record, the Debtor has simply failed to carry his burden of proof and establish evidence of prejudice if the Silvert claim is deemed timely-filed.

---

[4] While the Debtor argues that "when Silvert failed to file a proof of claim even though her attorney filed a notice of appearance, the Debtor believed Silvert realized her claim was time-barred and decided not to file a claim.  After all, she *never* pursued her judgment," Sur-Reply Brief at 10, n.5 (emphasis in original), the Court finds this argument unpersuasive for at least two reasons.  First, Silvert filed her proof of claim within about a month after her first appearance in the Case.  And second, judgment creditors often attempt to participate in bankruptcy cases when they have not previously undertaken state court collection activities.  While the Debtor may have "believed" this, his belief was not a reasonable one and does not constitute evidence sufficient to support his laches defense.

[5] While the Debtor argues that the "allowance of the claim very likely will lead to the demise of the case," Sur-Reply Brief at p. 11, there is no credible evidence in the record to support such a dramatic assertion.  In fact, Noble did not oppose the Motion or formally appear at the hearing on the Motion.   So, on this record it does not appear that he is concerned about Silvert's claim being deemed timely-filed.  Moreover, there is no evidence in the record from which the Court can conclude that creditors will not participate in a plan process in good faith.  While the Debtor argues that Silvert "has stated her intention to vote against the plan unless the Debtor causes the investor in [the Debtor's ongoing nutritional supplement business] to pay her judgment separately," Sur-Reply Brief at p. 11, there is no evidence to support that argument and, even if there was such evidence, the Debtor has potential remedies that he can invoke in connection with contested confirmation hearings if Silvert engages in legally impermissible conduct in the Case.

**Memorandum Opinion and Order**                                                                                                                   9

### III. Conclusion

Having considered the evidence presented and the applicable law, the Court concludes that Silvert's claim should be deemed timely-filed in accordance with the due process clause of the United States Constitution and its effects as described by the Fifth Circuit in *Greyhound Lines, Inc. v. Rogers (In re Eagle Bus Mfg., Inc.)*, 62 F.3d 730 (5th Cir. 1995). However, this decision is without prejudice to any further objections the Debtor may have to the ultimate allowance of Silvert's claim in the Case.

**SO ORDERED**.

### End of Memorandum Opinion and Order ###